IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-02116-CMA-MEH

ROGER PEARSON, and
LONNIE MCRAE, on behalf of themselves and all others similarly situated,

     Plaintiffs,

v.

GEICO CASUALTY COMPANY, and
DOES 1–10,

     Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**Michael E. Hegarty, United States Magistrate Judge**.

     Plaintiffs Roger Pearson and Lonnie McRae, on behalf of themselves and others similarly situated ("Plaintiffs"), initiated this purported class action on September 1, 2017 and filed the operative Amended Complaint on December 21, 2017 alleging, *inter alia*, that Defendant Geico Casualty Company ("Geico") unlawfully failed to pay its insureds – specifically, holders of Geico automobile insurance policies – ownership tax and title and registration fees associated with a motor vehicle's total loss in the event that an automobile accident or other event results in a total loss determination by Geico for the insured's vehicle. In response, Geico filed a motion to dismiss all of the Plaintiffs' claims. The Court finds that Colo. Rev. Stat. § 10-4-639(1) does not require an insurer to pay "ownership taxes" in settlement for the total loss of a vehicle; the issue of whether claims under Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116 are subject to a one-year statute of limitations is currently before the Colorado Supreme Court and, thus, any ruling is premature at this time; the Plaintiffs' argument that certain legal issues are "a matter of first impression" is not

sufficient to support dismissal of their § 10-3-1115 and bad faith breach of insurance contract claims; the Plaintiffs failed to plead a deceptive trade practice with particularity as required by Fed. R. Civ. P. 9(b); Plaintiffs do not properly state claims for monetary relief on behalf of a class under the CCPA; Plaintiffs do not oppose dismissal without prejudice of their class claims for injunctive relief under the CCPA and their claims for punitive and exemplary damages; and dismissal of the Doe Defendants at this early stage would be premature. Thus, the Court recommends that the Honorable Christine M. Arguello grant in part and deny in part Geico's motion.

## BACKGROUND

### I. Statement of Facts

The following are factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by the Plaintiffs in the Amended Complaint, which are taken as true only for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When they purchased a 2007 Lexus ES 350 ("2007 Lexus"), the Plaintiffs incurred an estimated $157 in ownership taxes and title and registration fees.

For the 2015 calendar year, the Plaintiffs obtained an automobile insurance policy from Geico for the 2007 Lexus, which provided coverage in the event of total loss of the motor vehicle.

On or about August 3, 2015, Plaintiffs' 2007 Lexus caught fire in a parking lot. Thereafter, the Plaintiffs incurred an estimated $225.03 in ownership taxes and title and registration fees related to the purchase of a 2010 Lexus RX 350 ("2010 Lexus"), which replaced the 2007 Lexus. Plaintiff Pearson also submitted a claim to Geico based on the insurance policy he had obtained for the 2007 Lexus.

In a document dated September 1, 2015, Geico provided Plaintiffs with a "Total Loss Settlement Explanation." Geico determined during its investigation the 2007 Lexus was a total loss as a result of the fire and provided an accounting of the insurance benefits it would pay Plaintiffs in light of the total loss. As stated in the document, Geico did not agree to pay Plaintiffs' ownership tax and title and registration fees associated with the total loss of the 2007 Lexus, including, without limitation, the total amount of ownership tax and title and registration fees incurred related to the replacement vehicle. Instead, Geico paid Plaintiffs $26.50 related to unspecified "State and Local Regulatory Fees" only. To date, Geico has not paid the Plaintiffs any such ownership tax and title and registration fees incurred for the 2007 Lexus and replacement vehicle.

For the 2015 calendar year, Plaintiffs obtained an automobile insurance policy from Geico for the 2010 Lexus, which provided coverage in the event of total loss of the motor vehicle.

On or about November 27, 2015, Plaintiffs' 2010 Lexus was involved in an accident. Thereafter, Plaintiffs incurred an estimated $197.55 in ownership taxes and title and registration fees related to the purchase of a 2008 Toyota Tundra ("2008 Toyota"), which replaced the 2010 Lexus. Plaintiff Pearson also submitted a claim to Geico based on the insurance policy obtained from Geico for the 2010 Lexus.

In a document dated December 31, 2015, Geico provided Plaintiffs with a "Total Loss Settlement Explanation." Geico determined during its investigation the 2010 Lexus was a total loss as a result of the accident and provided an accounting of the insurance benefits. As stated in that document, Geico did not agree to pay Plaintiffs' ownership tax and title and registration fees associated with the total loss of the 2010 Lexus, including, without limitation, the total amount of ownership tax and title and registration fees incurred related to the replacement vehicle. Instead,

Geico paid Plaintiffs $26.50 related to unspecified "State and Local Regulatory Fees" only. To date, GEICO has not paid the Plaintiffs any such ownership tax and title and registration fees incurred for the 2010 Lexus and replacement vehicle.

## II.      Procedural History

Based on these factual allegations, Plaintiffs claim, on behalf of themselves and others similarly situated, violations of Colo. Rev. Stat. § 6-1-105, et seq. and § 10-3-1115, et seq., and bad faith breach of insurance contract. Am. Compl., ECF No. 36.

Geico moves to dismiss these claims arguing that Plaintiffs fail to allege they are entitled to any ownership taxes or fees associated with the total loss, but regulatory fees were, in fact, paid with the settlement of the total loss of Plaintiffs' vehicles, that Plaintiffs fail to properly plead the elements of their causes of action, that Plaintiffs' third claim for relief is time barred, and that Plaintiffs' requests for punitive damages are premature.

Plaintiffs do not oppose the dismissal of their requests for punitive damages and for class-wide injunctive relief under the CCPA (Resp. 22 n.7, 23); otherwise, Plaintiffs counter that Colorado statutory law supports their position that ownership taxes fall within the purview of Colo. Rev. Stat. § 10-4-639(1) and this section mandates the payment of such taxes and fees; they have plausibly pled the elements of all causes of action; and the actual statute of limitations for a § 10-3-1115 claim is unresolved and currently before the Colorado Supreme Court, but Plaintiffs believe the law demonstrates a one-year statute of limitations is not applicable.

Geico replies that Plaintiffs fail to articulate any basis for how ownership taxes fall within the ambit of § 10-4-639; they fail to plead their claim for violation of the Colorado Consumer Protection Act, 6-1-101, et seq. ("CCPA") with particularity; their admission that the interpretation

of § 10-4-639 is a matter of first impression belies any allegation that Geico acted unreasonably; and they failed to oppose Geico's arguments concerning dismissal of Plaintiffs' claims for injunctive relief under the CCPA.

## LEGAL STANDARDS

The parties do not dispute that the pleading requirements of Fed. R. Civ. P. 9(b) apply to Plaintiffs' CCPA claim; otherwise, the Court will apply Fed. R. Civ. P. 8 and applicable case law to analyze Geico's Rule 12(b)(6) motion.

## I.    Pleading Requirements under Fed. R. Civ. P. 9(b)

Pursuant to Federal Rule of Civil Procedure 9(b), a more stringent pleading standard is mandated for certain claims, such as fraud or misrepresentation.  "For any claim alleging fraud, the circumstances constituting fraud or mistake must be stated with particularity." *In re Accelr8 Tech. Corp. Secs. Litig.*, 147 F. Supp. 2d 1049, 1054 (D. Colo. 2001) (citing Fed. R. Civ. P. 9(b)).  Thus, with regard to their second claim alleging a violation of the CCPA, Plaintiffs must plead "the who, what, when, where, and how of the alleged fraud" or in other words, "the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726–27 (10th Cir. 2006); *see also HealthONE of Denver, Inc. v. UnitedHealth Grp., Inc.*, 805 F. Supp. 2d 1115, 1120–21 (D. Colo. 2011) ("a plaintiff must meet the heightened pleading requirements pursuant to Rule 9(b) to prove a deceptive or unfair trade practice.").  In the District of Colorado, this is required regardless of whether the alleged fraud is an active representation or a passive omission. *See Tara Woods Ltd. P'ship v. Fannie Mae*, 731 F. Supp. 2d 1103, 1114 (D. Colo. 2010).

## II.    Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 678–80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more

than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id.* (quotation marks and citation omitted).

## ANALYSIS

Geico seeks dismissal of all three claims for relief alleged by the Plaintiffs: (1) violations of Colo. Rev. Stat. § 10-3-1115, et seq.; (2) violations of Colo. Rev. Stat. § 6-1-105, et seq.; and (3) bad faith breach of insurance contract. The Court will address Geico's requests for dismissal of each of these claims in turn.

## I.     First Claim for Relief

For their § 10-3-1115 claim, Plaintiffs allege:

33. C.R.S. § 10-4-639(a) [sic] provides in relevant part that an insurer shall pay title fees and any other transfer or registration fees associated with the total loss of a motor vehicle.

34. C.R.S. § 10-3-1115(1)(a) provides in relevant part that a person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant.

35. Despite its own determination the insured vehicles of Plaintiffs and the Class Members were total losses, when claims were submitted by Plaintiffs and the Class Members after a motor vehicle accident or other event resulted in damage to their property, GEICO failed to pay ownership tax and title and registration fees required by C.R.S. § 10-4-639(a) [sic], and therefore violated the express language of that statute.

36. Additionally, GEICO's failure to make such payments were a violation of C.R.S. § 10-3-1115(1)(a), as an unreasonable delay and/or denial of a claim for insurance benefits GEICO owed Plaintiffs and the Class Members. GEICO had no reasonable basis to deny making these payments.

Am. Compl., ECF No. 36.  Geico contends first that Plaintiffs fail to articulate how the payment of ownership taxes is required by § 10-4-639.  Next, Geico argues that any claim by Plaintiffs is barred by § 10-3-1115's one-year statute of limitations.  Finally, Geico asserts the Plaintiffs' admission that interpretation of § 10-4-639 is a "matter of first impression" belies Plaintiffs' allegation that any failure to pay ownership taxes was "unreasonable."

      A.     Does § 10-4-639(1) Require an Insurer to Pay Ownership Taxes in Settlement for the Total Loss of a Vehicle?

As relevant here, Section 10-4-639(1) of the Colorado Revised Statutes, titled "Claims Practices for Property Damage," provides that "[a]n insurer shall pay title fees, sales tax, and any other transfer or registration fee associated with the total loss of a motor vehicle."  Plaintiffs contend that ownership tax is a form of "registration fee" required to be paid under the statute. Geico counters that "ownership taxes" are not included in the list of fees and taxes required to be paid and the Colorado legislature has, in other statutes, delineated the difference between "ownership tax" and "registration fee."

These "other statutes" include Colo. Rev. Stat. §42-3-105, titled "Application for registration -- tax," which provides, in pertinent part: "(3) The owner of such vehicle or the owner's agent shall, upon filing the application for registration, pay such fees as are prescribed by sections 42-3-304 to 42-3-306, together with the annual specific ownership tax on the motor vehicle, trailer, semitrailer, or trailer coach for which the license is to be issued."  In turn, Colo. Rev. Stat. § 42-3-304, titled "Registration fees -- passenger and passenger-mile taxes -- clean screen fund -- definitions --

repeal," and § 42-3-306,[1] titled "Registration fees -- passenger and passenger-mile taxes -- fee schedule -- repeal," identify several types of fees to be paid with registration or annual registration renewal of different types of motor vehicles. The only "tax" identified and required to be paid by these statutes is a "passenger-mile tax" imposed on owners of "vehicles with a seating capacity of more than fourteen and operated for the transportation of passengers [over Colorado's public highways] for compensation" and of " passenger bus[es] operating over the public highways of this state and rendering service pursuant to a temporary certificate of public convenience and necessity issued by the public utilities commission." *See* Colo. Rev. Stat. § 42-3-304(13), § 42-3-306(11).

Finally, Colo. Rev. Stat. § 42-3-107, titled "Taxable value of classes of property--rate of tax--when and where payable -- department duties -- apportionment of tax collections -- definitions -- rules -- repeal," defines the taxable value and rate of "annual specific ownership tax" on different classes of motor vehicles. Notably, § 42-3-106 provides that an "owner of each item of classified personal property shall pay an annual specific ownership tax unless exempted by this article. Such specific ownership tax shall be annually computed in accordance with section 42-3-107 in lieu of all annual ad valorem taxes." Colo. Rev. Stat. § 42-3-106(1). This section also defines the different classes of personal property, identifying the type of vehicle at issue here as "Class A." *Id.* § 42-3-106(2)(a).

"When federal courts are called upon to interpret state law, they must look to rulings of the highest state court, and if no such rulings exist, they must endeavor to predict how the high court would rule." *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 899 (10th Cir. 2006). Here, the Court finds and the parties appear to agree that whether ownership tax is among the fees that

---

[1]Colo. Rev. Stat. § 42-3-305 has been repealed.

must be paid by an insurer for a total vehicle loss in accordance with § 10-4-639(1) is an issue of first impression in Colorado.  Consequently, the Court must "interpret state laws according to state rules of statutory construction, and therefore interpret [a] statute based on its plain language." *Ward v. Utah*, 398 F.3d 1239, 1248 (10th Cir. 2005).

The Colorado Court of Appeals recently summarized the state's law concerning statutory interpretation as follows:

> When interpreting a statute, a court must ascertain and give effect to the General Assembly's "purpose or intent in enacting the statute." *Martin v. People*, 27 P.3d 846, 851 (Colo. 2001). To determine legislative intent, we first look to the language of the statute, giving words and phrases their commonly accepted and understood meanings. [*People v.*] *Garcia*, 113 P.3d [775] at 780 [(Colo. 2005)]; *Martin*, 27 P.3d at 851. If those words are clear and unambiguous, we apply the statute as written. *See Martin*, 27 P.3d at 851. We may discern the plain meaning of statutory language by referring to its common dictionary meaning. *See People v. Hunter*, 2013 CO 48, ¶ 10, 307 P.3d 1083.

> "The legislative choice of language may be concluded to be a deliberate one calculated to obtain the result dictated by the plain meaning of the words." *Hendricks v. People*, 10 P.3d 1231, 1238 (Colo. 2000) (quoting *City & Cty. of Denver v. Gallegos*, 916 P.2d 509, 512 (Colo. 1996)); *People v. Guenther*, 740 P.2d 971, 976 (Colo. 1987) (same). Consequently, "[w]hen the General Assembly includes a provision in one section of a statute, but excludes the same provision from another section, we presume that the General Assembly did so purposefully." *Well Augmentation Subdistrict of Cent. Colo. Water Conservancy Dist. v. City of Aurora*, 221 P.3d 399, 419 (Colo. 2009); *accord United States v. Pauler*, 857 F.3d 1073, 1076 (10th Cir. 2017) (Where the legislature "includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that [it] acts intentionally and purposely in the disparate inclusion or exclusion." (quoting *Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) )).

> Finally, a court must read and consider the statute as a whole, giving harmonious and sensible effect to all its parts. *People v. Martinez*, 70 P.3d 474, 477 (Colo. 2003). If the statute is unambiguous and does not conflict with other statutory provisions, the court need look no further in determining its meaning. *People v. Luther*, 58 P.3d 1013, 1015 (Colo. 2002). However, if the language of the statute is ambiguous, or in conflict with other provisions, the court may look to legislative history, prior law, the consequences of a given construction, and the goal of the statutory scheme to

determine its meaning. *Id.*

*Abu-Nantambu-El v. State of Colo.*, -- P.3d --, 2018 WL 1247540, at *2–*3 (Colo. App. Mar. 8, 2018). With these legal principles in mind, the Court finds that an "ownership tax" in Colorado is separate from and different than a "registration fee" for purposes of determining which fees must be paid by an insurer for a total vehicle loss under § 10-4-639.

First, the Court finds that a review of the subject statute itself reveals the legislature's use of the words "tax" and "fee" separately to describe the various payments an insurer must make: "[a]n insurer shall pay title fees, sales tax, and any other transfer or registration fee associated with the total loss of a motor vehicle." Colo. Rev. Stat. § 10-4-639(1). Certainly, if the legislature intended that insurers pay an "ownership tax" as well, such tax would be listed. *See Martin*, 27 P.3d at 851 (if statute's words are clear and unambiguous, courts must apply the statute as written).

In fact, the Colorado legislature has specifically identified and defined both a "registration fee" and an "ownership tax" imposed on owners of motor vehicles. First, reading the statute as a whole, Part 1 of which is titled "Registration and Taxation," Section 42-3-105 specifically requires that vehicle owners seeking to register their vehicles with the state "pay such fees as are prescribed by sections 42-3-304 to 42-3-306, *together with the annual specific ownership tax on the motor vehicle . . .* for which the license is to be issued." Colo. Rev. Stat. § 42-3-105(3) (emphasis added). This section alone demonstrates the difference between a registration fee and an ownership tax. There is nothing in sections 42-3-304 or 42-3-306 indicating or even suggesting that an "ownership tax" is among the types of fees listed therein.

Rather, a "specific ownership tax" is identified and defined by the Colorado legislature in sections 42-3-106 and 42-3-107. Subsection 106 requires that an "owner of each item of classified

personal property shall pay an annual specific ownership tax unless exempted by this article" and classifies automobiles as "Class A" personal property. Colo. Rev. Stat. § 42-3-106(1); (3). Subsection 107, in turn, defines the taxable values of the different motor vehicle classes and sets the tax rates for each year the vehicle is in service. *Id.* § 42-3-107(1); (2). While ownership taxes and registration fees are both required to be paid at the time of vehicle registration (§ 42-3-105(3)), a review of the relevant statutes demonstrates that this is the only similarity between a "registration fee" and an "ownership tax" in Colorado.

Therefore, the Court concludes that § 10-4-639(1) does not require an insurer to pay ownership taxes in settlement for the total loss of a vehicle and, thus, the Plaintiffs have failed to demonstrate any entitlement to such payment from Geico. To the extent Plaintiffs' first claim for relief seeks payment of the ownership taxes paid on any totaled or replacement vehicles, the Court recommends Judge Arguello grant Geico's motion to dismiss the claim.

This does not end the inquiry, however. Plaintiffs allege they paid hundreds of dollars "in ownership taxes and title and registration fees," but Geico paid them only $26.50 in "State and Local Regulatory Fees" for each vehicle loss. Geico contends that Plaintiffs' allegations are insufficient because they "admit" to receiving payment for registration fees. The Court is not convinced; although the Plaintiffs do not articulate "how much was paid for which fee and/or tax," the Court recommends Judge Arguello find at this early stage of the litigation that Plaintiffs' allegations plausibly state they have been damaged by Geico's failure to pay the fees required by § 10-4-639(1) in full; whether $26.50 per vehicle loss covers the fees and sales tax owed pursuant to statute is a question for the fact finder.

12

B.    Is the Plaintiffs' First Claim Barred by the Statute of Limitations?

Geico "concedes that the question of whether CRS §§ 10-3-1115(1)(a) and 10-3-1116(a) is subject to a one year statute of limitation has been certified to the Colorado Supreme Court" but argues that District of Colorado opinions that find the Colorado statutes subject to a one-year limitation are "extremely persuasive." Reply 8 n.3. This Court agrees that the opinions in *Gerald H. Phipps, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 14-cv-01642-PAB, 2015 WL 5047640 (D. Colo. August 27, 2015) and *Hernandez v. Am. Standard Ins. Co. of Wis.*, No. 11-cv-03076-RBJ, 2013 WL 6633392 (D. Colo. Dec. 16, 2013) are persuasive based on thorough analyses of whether a claim pursuant to Colo. Rev. Stat. §§ 10–3–1115 and 10–3–1116 is one for a "penalty" for which a one-year statute of limitations would apply. However, at the time the courts issued these opinions, the Colorado Supreme Court had not accepted the issue as certified for resolution. *See Rooftop Restorations, Inc. v. Am. Family Mut. Ins. Co.*, No. 15-cv-02560-WJM, ECF No. 42 (D. Colo. Sep. 19, 2017).

The Court finds that the proper course of action is to await a ruling from the Colorado Supreme Court as to whether a claim under Colo. Rev. Stat. §§ 10–3–1115 and 10–3–1116 is one for a penalty and, if so, whether a one-year statute of limitations applies to bar untimely claims. Accordingly, the Court recommends that Judge Arguello deny without prejudice the motion to dismiss Plaintiffs' first claim for relief based on a statute of limitations defense.

C.    Does Plaintiffs' "Matter of First Impression" Argument Support Dismissal?

Geico cites, and the Court has found, no legal support for Geico's position that Plaintiffs' first claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiffs argue the issue of what fees are owed under Colo. Rev. Stat. § 10-4-639(1) has not yet been determined in Colorado.

To prove their first claim, the Plaintiffs must demonstrate that Geico "[delayed or] denied benefits without a reasonable basis." *Vaccaro v. Am. Family Ins. Grp.*, 275 P.3d 750, 760 (Colo. App. 2012); *see also TBL Collectibles, Inc. v. Owners Ins. Co.*, 285 F. Supp. 3d 1170, 1201 (D. Colo. 2018). "The reasonableness of an insurer's conduct is measured objectively based on industry standards in both the first-party and third-party context." *Am. Family Mut. Ins. Co. v. Allen*, 102 P.3d 333, 343 (Colo. 2004). This law demonstrates that a court opinion interpreting § 10-4-639(1) is not necessary to determine whether Geico acted reasonably; rather, the reasonableness of Geico's conduct will be measured by *industry* standards, which "may be established through expert opinions or state law." *Peden v. State Farm Mut. Auto. Ins. Co.*, 841 F.3d 887, 890 (10th Cir. 2016) (citing *Goodson v. Am. Standard Ins. Co. of Wis.*, 89 P.3d 409, 415 (Colo. 2004)).

The Court finds the lack of judicial interpretation of Colo. Rev. Stat. § 10-4-639(1) to be an insufficient basis on which to dismiss Plaintiffs' first claim for relief and recommends that Judge Arguello deny Geico's motion to dismiss the claim for this reason.

## II.    Second Claim for Relief

For their CCPA claim,[2] the Plaintiffs allege:

41. Colorado's Deceptive Trade Practices Act, C.R.S. § 6-1-105, et seq. ("DTPA"), provides an individual may maintain a private civil action against a company engaged in the sale of services for violations of the DTPA's provisions.

42. Plaintiffs allege GEICO violated the DTPA by, inter alia, failing to disclose material information about the automobile insurance policies it provided to Plaintiffs

---

[2]In their pleading, Plaintiffs refer to the statute as the "Deceptive Trade Practices Act." However, in 1969, Colorado's General Assembly adopted the CCPA which was based, in large part, on the Uniform Deceptive Trade Practices Act (UDTPA). *See May Dep't Stores Co. v. State ex rel. Woodard*, 863 P.2d 967, 973 n.9 (Colo. 1993). While the subsection to which Plaintiffs refer is titled "Deceptive trade practices," the proper title of the statute is "Colorado Consumer Protection Act." Colo. Rev. Stat. § 6-1-101.

and the Class Members under C.R.S. § 6-1-105(1)(u), i.e. by failing to disclose GEICO did not, as a uniform business practice, pay ownership tax and title and registration fees associated with a total vehicle loss.

43. As a result of GEICO's deceptive business practices, Plaintiffs and the Class Members have suffered damage and lost money in that they paid for insurance services they otherwise would not have had the truth been disclosed, in an amount to be proven at trial. Plaintiffs seek an order enjoining GEICO from continuing to engage in the deceptive practices alleged herein.

Am. Compl., ECF No. 36. Geico contends that Plaintiffs fail to plead with particularity that Geico engaged in a deceptive trade practice, to state plausibly that they suffered injury from Geico's conduct, to demonstrate how class allegations are properly stated for a CCPA claim, and to show how injunctive relief is properly sought under the CCPA.

A.      Are the Plaintiffs' Allegations Pled with Particularity?

As the Plaintiffs acknowledge, to demonstrate a plausible claim under the CCPA, a plaintiff must allege (1) the defendant engaged in an unfair or deceptive trade practice; (2) the challenged practice occurred in the course of the defendant's business, vocation, or occupation; (3) the challenged practice significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) the plaintiff suffered injury in fact to a legally protected interest; and (5) the challenged practice caused the plaintiff's injury. *See Rhino Linings United States v. Rocky Mt. Rhino Lining*, 62 P.3d 142, 146–147 (Colo. 2003); *see also Garcia v. Medved Chevrolet, Inc.*, 263 P.3d 92, 98 (Colo. 2011).

Pursuant to Fed. R. Civ. P. 9(b), "the circumstances constituting fraud or mistake must be stated with particularity." *In re Accelr8 Tech. Corp. Secs. Litig.*, 147 F. Supp. 2d at 1054. Thus, as applied to a claim under the CCPA, the first element—that a defendant engaged in an unfair or deceptive trade practice—must be particularly pled. According to the Tenth Circuit, a plaintiff must

plead "the who, what, when, where, and how of the alleged fraud" or, in other words, "the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Sikkenga*, 472 F.3d at 726–27. These requirements apply regardless of whether the alleged fraud is an active representation or a passive omission. *See Tara Woods Ltd. P'ship*, 731 F. Supp. 2d at 1114.

Here, the Plaintiffs allege Geico omitted (or concealed) its practice of failing to pay the fees required by Colo. Rev. Stat. § 10-4-639(1) for a total motor vehicle loss when selling its insurance policies to consumers. Am. Compl. ¶ 42. "A material omission is a deceptive trade practice if the defendant failed to 'disclose material information ... which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction.'" *Campfield v. State Farm Mut. Auto. Ins. Co.*, 532 F.3d 1111, 1121 (10th Cir. 2008) (quoting Colo. Rev. Stat. § 6–1–105(1)(u)).

First, the Court rejects Geico's argument that Plaintiffs fail to plead any "advertisement or sale"; Plaintiffs allege that they "obtained" or purchased insurance policies from Geico for their vehicles and it was at that time Geico allegedly concealed its "practice" of failing to pay the required fees upon a total vehicle loss. The Court finds these allegations sufficient to state the "advertisement or sale" element of a deceptive trade practice.

However, the Court agrees that Plaintiffs fail to allege with particularity the circumstances constituting Geico's concealment, including the identity of the party who allegedly concealed Geico's "practice" at the time Plaintiffs purchased the policies and how the party knew of Geico's practice at that time. *See* Colo. Rev. Stat. § 6-1-105(1)(u). Moreover, Plaintiffs assume a "practice" of concealing Geico's intent not to pay § 10-4-639(1) fees simply because their registration fees and

taxes totaled hundreds of dollars but the "fees" actually paid by Geico totaled $26.50 for each loss. While this allegation may be sufficient to state a plausible claim for injury under Fed. R. Civ. P. 8, it does not adequately plead "the who, what, when, where, and how of the alleged fraud" sufficient to meet the requirements of Fed. R. Civ. P. 9(b) and necessary to state a deceptive trade practice under the CCPA. *See Sikkenga*, 472 F.3d at 726–27.

Therefore, the Court recommends that Judge Arguello grant the motion to dismiss Plaintiffs' second claim for violations of the CCPA for the Plaintiffs' failure to allege with particularity that Geico "engaged in an unfair or deceptive trade practice."

    B.    <u>Are Plaintiffs' Class Claims Permitted under the CCPA?</u>

If Judge Arguello disagrees with this Court's analysis and determines that the Plaintiffs properly allege a deceptive trade practice under the CCPA, the Court recommends that Plaintiffs' class claims seeking actual and triple monetary damages and injunctive relief be dismissed. *See* Am. Compl., ECF No. 36 at 12.

Two judges in this District and two courts in the Tenth Circuit interpreting the CCPA have found that the statute expressly *excepts* the recovery of actual damages, triple damages, and attorney's fees in class actions and, thus, "creates no statutory liability for a defendant in a private class action." *See* Colo. Rev. Stat. §6-1-113(2); *see also Martinez v. Nash Finch Co.*, 886 F. Supp. 2d 1212, 1218–19 (D. Colo. 2012) (Krieger, J.) (§ 6-1-113(2) "defines a defendant's liability under the CCPA in a private action. It limits such liability to specified remedies, and expressly states that such remedies are not applicable in class actions. By logical extension, the CCPA creates no statutory liability for a defendant in a private class action."); *Friedman v. Dollar Thrifty Auto. Grp., Inc.*, No. 12-cv-02432-WYD, 2015 WL 4036319, at *2–*3 (Daniel, J.) (D. Colo. July 1, 2015)("a

class action for damages under the CCPA is barred"); *In re Syngenta AG MIR 162 Corn Litig.*, 131 F. Supp. 3d 1177, 1234–35 (D. Kan. 2015) ("the plain language of the present statute precludes a class action claim for actual damages"); *In re Santa Fe Natural Tobacco Co. Marketing & Sales Practices & Prods. Liability Litig.*, 288 F. Supp. 3d 1087, 1260 (D. N.M. 2017) ("The CCPA's statutory language, however, expressly prohibits class action recovery for damages.").

The Plaintiffs contend that a statement made by the Colorado Court of Appeals in *Robinson v. Lynmar Racquet Club, Inc.*, 851 P.2d 274, 278 (Colo. App.1993) demonstrates that "monetary relief under the CCPA is still available on a class-wide basis." Resp. 21–22. In *Robinson*, the court noted, "We observe that, although the statute does not preclude class members from bringing an action for actual damages, Robinson alleged no actual damages in her complaint . . . ." *Id.* However, the court addressed a prior version of the statute in which actual damages were not expressly included in the "exception" subsection of the statute. *See id.* The current version of the statute provides:

(2) **Except in a class action** or a case brought for a violation of section 61–709, any person who, in a private civil action, is found to have engaged in or caused another to engage in any deceptive trade practice listed in this article shall be liable in an amount equal to the sum of:

(a) The greater of:

(I) The **amount of actual damages sustained**; or

(II) Five hundred dollars; or

(III)Three times the amount of actual damages sustained, if it is established by clear and convincing evidence that such person engaged in bad faith conduct; plus

(b) In the case of any successful action to enforce said liability, the costs of the action together with reasonable attorney fees as determined by the court.

Colo. Rev. Stat. § 6-1-113(2) (emphasis added). As Chief Judge Krieger observed, "the question of whether class members could recover actual damages was not a question before the [*Robinson*] court" and, thus, Judge Krieger was "unpersuaded that *Robinson* stands for the proposition that a class of plaintiffs can obtain an award of actual damages under § 6–1–113." *Martinez*, 886 F. Supp. 2d at 1219 & n.6.

This Court finds persuasive the opinions of the majority of courts interpreting the CCPA and finding that "the CCPA creates no statutory liability for a defendant in a private class action." *Id.* As for whether the CCPA provides injunctive relief to a class, the Plaintiffs "do not concede injunctive relief is not available class-wide to private plaintiffs under the CCPA, but do not oppose Geico's motion on that particular issue only at this time." Resp. 22 n.7.

Therefore, the Court recommends that Judge Arguello grant Geico's motion to dismiss Plaintiffs' class claims for statutory damages under the CCPA with prejudice and dismiss the class claims for injunctive relief under the CCPA without prejudice.

## III. Third Claim for Relief

For their third claim for bad faith breach of insurance contract, the Plaintiffs allege:

45. GEICO's failure to pay ownership tax and title and registration fees associated with a total loss to its automobile insurance customers in Colorado, as mandated by C.R.S. § 10-4-639(a), was not reasonable conduct for an established automobile insurer such as GEICO.

46. As an established automobile insurer offering policies in Colorado, GEICO knew of or recklessly disregarded the fact that its failure to pay ownership tax and title and registration fees associated with the total loss of an insured motor vehicle in Colorado, based on C.R.S. § 10-4-639(a)'s mandate, was unreasonable.

47. As an established automobile insurer offering policies in Colorado, GEICO also knew of or recklessly disregarded the fact that its delay and/or denial of payments owed to Plaintiffs and Class members, in violation of C.R.S. § 10-3-1115(1)(a), was unreasonable.

> 48. Moreover, because Defendant acted wantonly, maliciously, oppressively, recklessly, and deliberately, for the purpose of enriching themselves at Plaintiffs' and Class members' detriment, Defendant's conduct warrants substantial punitive and exemplary damages in an amount to be determined at trial.

Am. Compl., ECF No. 36. While Plaintiffs' first and third claims both require that they demonstrate Geico's alleged conduct was "unreasonable," the tort also requires that "the insurer knew or recklessly disregarded the fact that its conduct was unreasonable." *Vaccaro*, 275 P.3d at 756.

Geico raises the same arguments here as those raised in support of its request to dismiss the Plaintiffs' first claim for relief. *See* Mot. 12; Reply 8–9. Therefore, for the same reasons set forth in Section I, *supra*, the Court finds that "ownership taxes" are not included the fees required to be paid by an insurer for a total vehicle loss; at this early stage of the litigation, the Plaintiffs' allegations plausibly state they have been damaged by Geico's knowing or reckless disregard of its failure to pay the fees required by § 10-4-639(1) in full; and, the reasonableness of Geico's conduct will be measured by industry standards, which "may be established through expert opinions or state law." The Court recommends that Judge Arguello grant Geico's motion to dismiss the Plaintiffs' third claim to the extent it seeks recovery for paid "ownership taxes" but, otherwise, deny the motion to dismiss Plaintiffs' third claim for recovery of "title fees, sales tax, and any other transfer or registration fee associated with the total loss of a motor vehicle." *See* Colo. Rev. Stat. § 10-4-639(1).

## IV.    Doe Defendants

Geico contends that "Plaintiffs' complaint focuses exclusively on Geico and is devoid of any allegations concerning the conduct of the Doe Defendants" and the Plaintiffs "ha[ve] not made a reasonable inquiry to identify their true identities." Mot. 14. The Court finds Geico's request to be premature at this early stage of the litigation. Geico's first contention is not altogether accurate;

Plaintiffs state in the operative pleading:

> 7. Plaintiffs are unaware of the true names and capacity of the defendants sued as DOES 1-10, and therefore sue these defendants by fictitious names. Plaintiffs will seek leave to amend this Complaint when and if the true identities of these DOE defendants are discovered. Plaintiffs are informed and believe and thereon allege that each of the defendants designated as a DOE is responsible in some manner for the acts and occurrences alleged herein, whether such acts or occurrences were committed intentionally, negligently, recklessly or otherwise, and that each said DOE defendant thereby proximately caused injuries and damages to Plaintiffs and the Class as herein alleged, and is thus liable for Plaintiffs' and the Class's injuries.

Am. Compl. ¶ 7, ECF No. 36. Geico's second contention merely raises a question of fact, which may not be adjudicated under Rule 12(b)(6). In this case, discovery does not end until January 21, 2019 and, thus, there is ample time in which the Plaintiffs may learn the identity(ies) of the Doe Defendant(s) and seek to amend the complaint. The Court finds in the interest of justice pursuant to Fed. R. Civ. P. 15(a) that the Plaintiffs should have a reasonable time period in which to attempt discovery of the identities of the Doe Defendants and recommends that Judge Arguello deny Geico's request to dismiss these Defendants at this time.

## V.       Punitive Damages

Geico contends that "[t]he inclusion of exemplary and punitive damage claims prior to the exchange of initial disclosures and before Plaintiff [sic] established prima facie proof of a triable issue violates § 13-21-102(1.5)(a)." Mot. 15. The Plaintiffs do not oppose Geico's request in this regard. Resp. 23.

Section 13-21-102(1.5)(a) of the Colorado Revised Statutes provides that a "claim for exemplary damages in an action governed by this section may not be included in any initial claim for relief. A claim for exemplary damages in an action governed by this section may be allowed by amendment to the pleadings only after the exchange of initial disclosures pursuant to rule 26 of the

Colorado rules of civil procedure and the plaintiff establishes prima facie proof of a triable issue." *See Adams v. Corrs. Corp. of Am.*, 187 P.3d 1190, 1197–98 (Colo. App. 2008) ("we agree that [plaintiffs'] request for punitive damages was premature in light of section 13–21–102(1.5)(a)").

The Court agrees that Plaintiffs' request for "exemplary and punitive damages" (Am. Compl., ECF No. 36 at 12) must be dismissed without prejudice and, therefore, recommends that Judge Arguello grant Geico's motion to dismiss the Plaintiffs' claims for punitive damages.

## CONCLUSION

The Court concludes Colo. Rev. Stat. § 10-4-639(1) does not require an insurer to pay "ownership taxes" in settlement for the total loss of a vehicle; the issue of whether claims under Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116 are subject to a one-year statute of limitations is currently before the Colorado Supreme Court and, thus, any ruling is premature; the Plaintiffs' argument that certain legal issues are "a matter of first impression" is not sufficient to support dismissal of their § 10-3-1115 and bad faith breach of insurance contract claims; the Plaintiffs failed to plead a deceptive trade practice with particularity as required by Fed. R. Civ. P. 9(b); Plaintiffs do not properly state claims for monetary relief on behalf of a class under the CCPA; Plaintiffs do not oppose dismissal of their class claims for injunctive relief under the CCPA and dismissal of their claims for punitive and exemplary damages without prejudice; and dismissal of the Doe Defendants at this early stage would be premature.

Given these findings, the Court respectfully recommends that Judge Arguello grant Geico's motion to dismiss the first and third claims to the extent they seek recovery of "ownership taxes," but otherwise deny the motion to dismiss the first and third claims; grant the motion to dismiss Plaintiffs' second claim for failure to plead a "deceptive trade practice" or, in the alternative, dismiss

with prejudice the claim seeking class-wide monetary damages and dismiss without prejudice the claim seeking class-wide injunctive relief; grant the motion to dismiss without prejudice the claims for punitive and exemplary damages; and, deny the motion to dismiss the Doe Defendants.

THEREFORE, based on the entire record and for the reasons stated above, the Court respectfully recommends that Geico's Motion to Dismiss [filed January 17, 2018; ECF No. 37] be **granted in part and denied in part** as set forth herein.[3]

Respectfully submitted at Denver, Colorado, this 7th day of May, 2018.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge

---

[3]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual and legal findings of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir.1991)).